UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TIMOTHY WAYNE ROBERTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00322-JRS-MG |
| | ) | |
| RICHARD BROWN, | ) | |
| JERRY SNYDER, | ) | |
| RANDY PURCELL, | ) | |
| DAVIS, | ) | |
| ANDREA STROUP, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Timothy Wayne Robertson, an Indiana inmate, brought this action under 42

U.S.C. § 1983 alleging that the defendants held him in segregation in violation of his Eighth and

Fourteenth Amendment rights and that defendant Brown was deliberately indifferent to his hand

injury in violation of his Eighth Amendment rights. The defendants have moved for summary

judgment. Dkt. 54. For the reasons discussed in this Order, the defendants' motion for summary

judgment, dkt. [54], is **denied as to** Robertson's Fourteenth Amendment claims against defendants

Snyder, Purcell, and Stroup and **granted as to** all other claims.

**I.
Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for

its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Facts and Background

At the times relevant to the complaint, Robertson was housed at Wabash Valley Correctional Facility (WVCF). Richard Brown was the Warden of WVCF. Jerry Snyder was Unit Team Manager. Randy Purcell was a Case Manager. Travis Davis worked in Internal Affairs. And Andrea Stroup was Classification Supervisor. Dkt. 17.

In late February 2018, prison officials suspected that Robertson was passing drugs to another inmate. Robertson tested negative for drug usage, but the inmate he was suspected of supplying with drugs tested positive for meth. Dkt. 54-3.

On March 8, 2018, Robertson was involved in an altercation with another inmate and his hand was injured. Robertson Deposition, dkt. 54-1 at 48-49. Robertson was moved to administrative segregation on March 14, 2018. Dkt. 17 at 2. Defendant Travis Davis, an internal investigator, told Robertson he was being placed in administrative restrictive status housing for his own safety after the altercation and because Davis suspected Robertson was involved in "some sort of scheme." Dkt. 54-2. Davis also asked Robertson if he wanted to stay in segregation until he "talked." Dkt. 54-1 at 16. The record confirms that Davis hoped that the placement would motivate Robertson to confess to drug trafficking. Dkt. 54-2. Through Robertson's time in segregation, defendants Purcell, Snyder, and Stroup signed off on his classification review and appeal forms. Dkt. 54-1 at 34-41; dkt. 1-1; dkt. 60-1 at 15-19.

On May 14, 2018, Robertson submitted a formal grievance complaining that his hand still hurt from the injury he received on March 8, 2018, and that he had not been sent to a hand specialist. Dkt. 54-1 at 29-30. In response, a medical provider examined him on May 14, 2018. *Id.* at 50; dkt. 54-4. Robertson filed a grievance appeal on May 28, 2018, and defendant Warden Brown responded on June 1, 2018. Brown stated that he had reviewed the grievance appeal and related documents and that Robertson could file a healthcare request form if he was still experiencing hand pain. Dkt. 54-4 at 2; dkt. 54-1 at 30-31. Robertson believes he was then given the form that he needed and that he submitted it and was subsequently seen by medical staff. Dkt. 54-1 at 33-34.

On January 7, 2019, Robertson wrote an informal grievance to Warden Brown complaining that he had been denied an appointment with an outside hand specialist because he was in restricted

housing. In response, Brown informed Robertson that no medical provider had referred Robertson

to an outside hand specialist and that Robertson could submit a healthcare request if he was still

experiencing issues with his hand. Dkt. 17-1.

Robertson was transferred out of administrative segregation on February 5, 2019. Dkt. 17

at 2. During his time in administrative segregation, he received 30-day reviews and could file

classification appeals. Dkt. 54-1 at 20-23. But the 30-day reviews appear to be identical print outs

of the same boilerplate language denying a change in placement every month. *Id*. at 21-22.

While in segregation, Robertson had access to showers, but the water was cold. His food

was also served cold on most occasions. *Id*. at 73-74. He was not allowed to attend group religious

services and could not attend law library. *Id*. at 43-44.

### III.
### Analysis

#### A.  Fourteenth Amendment Due Process Claim

"The Supreme Court held in *Hewitt* [*v. Helms,* 459 U.S. 460 (1983)] that the Due Process

Clause mandates that prison officials periodically review whether an inmate placed in

administrative segregation continues to pose a threat." *Isby v. Brown,* 856 F.3d 508, 524 (7th Cir.

2017). "[A] meaningful review ... is one that evaluates the prisoner's current circumstances and

future prospects, and, considering the reason(s) for his confinement to the program, determines

whether that placement remains warranted." *Id.* at 527 (internal quotation omitted).

#### 1.  Personal Involvement

The defendants first argue that § 1983 liability requires personal involvement in the alleged

constitutional violation. Dkt. 5 at 5-6. "For constitutional violations under § 1983 or *Bivens*, a

government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662,

669 (7th Cir. 2015) (citation and quotation marks omitted). Thus "[a] damages suit under § 1983

requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'") (citation and quotation marks omitted).

The record reveals that defendants Purcell, Snyder, and Stroup were personally involved in either preparing reviews of Robertson's placement, reviewing his classification appeals and grievances, or signing off on such reviews. Dkt. 54-1 at 34-41; dkt. 1-1; dkt. 60-1 at 15-19. These facts demonstrate sufficient personal involvement for these defendants to be liable for the alleged constitutional violation.

But the record does not reflect similar personal involvement by defendants Davis or Brown. Although Davis was responsible for Robertson's initial placement in segregation, there is no evidence that he was involved in, or was responsible for, reviewing Robertson's continued placement. Robertson testified at his deposition that defendant Purcell told Robertson to complain to Davis about Robertson's continued placement in segregation, but there is no evidence that Robertson did so. Dkt. 54-1 at 39-40. Similarly, there is no evidence that Warden Brown was involved in the review process. Robertson testified that he addressed one request for interview to Warden Brown, but defendant Snyder intercepted it and responded in place of Brown. Dkt. 54-1 at 29-34; dkt. 60-1 at 14.

Robertson mainly argues that Brown should be liable for the alleged Fourteenth Amendment violation because, as warden, he was responsible for what happened at the prison. Dkt. 60 at 1, 9. But there is no supervisory liability under § 1983. *Locke*, 788 F.3d at 669. For these reasons, defendants Davis and Brown are entitled to summary judgment on Robertson's Fourteenth Amendment claim.

## 2. Liberty Interest

The defendants argue that Robertson had no liberty interest in being placed in general population because he was held in segregation for less than a year. Thus, defendants argue, he was not entitled to periodic reviews of his placement in segregation. The defendants rely on *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 698 (7th Cir. 2009), for the proposition that "six months of segregation is not an extreme term and, standing alone, would  not trigger due process." But Robertson was held in segregation for nearly eleven months. And the *Marion* court held that Marion's confinement of nearly eight months "may implicate a liberty interest [depending on the conditions]." *Id*. at 699. The Seventh Circuit confirmed that eight months in segregation was sufficient to create a liberty interest in *Williams v. Brown*, No. 20-1858, 2021 WL 1124048, at *3 (7th Cir. Mar. 24, 2021). Furthermore, *Marion* and *Williams* involved finite sentences in segregation following disciplinary proceedings while Robertson was placed in administrative segregation for an indefinite period of time.

Both *Marion* and *Williams* discussed the standard applied in *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005), which considers whether the duration and conditions "taken together [] impose an atypical and significant hardship within the correctional context." The defendants argue that Robertson's conditions in confinement were not harsh enough to trigger a protected liberty interest. But a reasonable juror could conclude that the duration of Robertson's confinement combined with the restrictive and inhospitable conditions of segregation triggered his right to periodic review of his classification.

The defendants argue alternatively that Robertson received sufficient due process through the 30-day reviews and the availability of a classification appeal. But the record reveals that the 30-day reviews completed by defendant Purcell mirror the types of perfunctory reviews found to

6

be meaningless in *Isby*. Dkt. 60-1 at 15-19. There remains a genuine issue of material fact as to whether these reviews were "meaningful" for purposes of due process.

For these reasons, defendants Snyder, Purcell, and Stroup are not entitled to summary judgment on Robertson's Fourteenth Amendment claim.

### 3.  Qualified Immunity

The defendants argue alternatively that they are entitled to qualified immunity on this claim because it is not clearly established that periodic reviews in which an inmate in restricted housing has the opportunity to challenge his placement in writing but not to appear in person violate the inmate's procedural due process rights or that ten to eleven months in restrictive status housing is sufficiently long as to trigger a liberty interest thus even implicating the Fourteenth Amendment.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). To overcome an assertion of qualified immunity, a plaintiff must show that "(1) the defendant violated a constitutional right, and (2) that [the] right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). In other words, qualified immunity is appropriate when the clearly established law, as applied to the facts, "would have left objectively reasonable officials in a state of uncertainty." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).

Reasonable prison officials should have known in 2018 that inmates in segregation are entitled to meaningful periodic reviews. *See Hewitt v. Helms,* 459 U.S. 460, 477 n.9 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Isby*, 856 F.3d at 530 ("[P]rison officials have been on notice since *Hewitt* that periodic reviews of administrative

segregation are constitutionally required, and it is self-evident that they cannot be a sham."). And reasonable prison officials should have known that ten to eleven months in segregation at WVCF, the same facility at issue in *Isby*, was sufficient to trigger a liberty interest. *See Marion,* 559 F.3d at 699; *Isby*, 856 F.3d at 512.

Under some "extraordinary circumstances," an official may be entitled to qualified immunity based on reasonable ignorance of clearly established law governing the official's conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *see also Amore v. Navarro*, 624 F.3d 522, 535 (2d Cir. 2010) (officer entitled to qualified immunity despite arresting plaintiff under statute that had been held unconstitutional). But the defendants provide no evidence of such extraordinary circumstances.

Because it was clearly established by 2018 that ten to eleven months in segregation at WVCF was sufficient to trigger a liberty interest and because a genuine issue of fact remains as to whether Robertson received the process required by *Hewitt*, summary judgment on the grounds of qualified immunity is not appropriate. *Isby*, 856 F.3d at 530. Accordingly, defendants Snyder, Purcell, and Stroup are not entitled to judgment as a matter of law based on qualified immunity.

## B. Conditions of Confinement Claim

Robertson claims that the conditions of confinement in segregation are significantly worse than the conditions in general population. The defendants argue that Robertson's complaints about cold showers and food, and lack of access to group religious activities and the law library are insufficient to support an Eighth Amendment conditions of confinement claim.

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Pursuant to the Eighth Amendment,

prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted).

To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing cases). This standard is different that the "atypical and significant hardship" standard applied in the Fourteenth Amendment context.

The objective showing requires "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, … 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted).

After showing the objective component, a plaintiff must next establish "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (internal quotation omitted).

In addition, negligence or even gross negligence is not sufficient to support a § 1983 claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

The record shows that Robertson was subjected to cold showers and cold food in segregation and that he could not physically attend law library or religious services. These conditions do not constitute extreme deprivations that could be described as cruel and unusual. While they may be harsher and more restrictive than conditions experienced in general population, no juror could conclude that they are sufficiently serious to violate the Eighth Amendment. Therefore, the defendants are entitled to summary judgment on this claim.

### C.  Deliberate Indifference Claim Against Brown

Robertson alleges that Brown was deliberately indifferent to his hand injury in violation of his Eighth Amendment rights. Brown responded to Robertson's grievance appeal in June 2018 and to Robertson's informal grievance in January 2019. The first response stated that Robertson could submit a healthcare request form if his hand still hurt. Dkt. 54-4 at 2. The second response informed Robertson that no medical provider had referred Robertson to an outside hand specialist and that Robertson could submit a healthcare request if he was still experiencing issues with his hand. Dkt. 17-1.

As noted above, Robertson's treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "To

10

determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc).

"[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). An inmate's correspondence to a prison official may provide sufficient knowledge of a constitutional deprivation. *Id.* at 781-82. "[O]nce an official is alerted to an excessive risk to inmate safety or health through [an inmate's] correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 782.

In contrast, if, upon learning of an inmate's complaints, a prison official reasonably responds to those complaints, he lacks a "sufficiently culpable state of mind" to be deliberately indifferent. *See Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (finding grievance counselor did not violated the Eighth Amendment where he researched inmate's complaint, learned that medical professionals had seen and diagnosed inmate with medical condition and determined that surgery was not required).

Defendant Brown is entitled to summary judgment because the undisputed facts establish that he reasonably responded to Robertson's grievance appeal in 2018 and informal grievance in 2019. Brown facilitated Robertson's access to healthcare by providing him with the appropriate forms to request such care. No reasonable juror could conclude that Brown exhibited deliberate indifference with respect to Robertson's grievances. *See Johnson*, 433 F.3d at 1010-11. Brown is therefore entitled to summary judgment.

11

### D. Qualified Immunity

The Court addressed the defendants' qualified immunity argument as to Robertson's Fourteenth Amendment claim in Section III-A above. The Court does not address the defendants' qualified immunity argument as to Robertson's Eighth Amendment claims because the Court found that Robertson's Eighth Amendment rights had not been violated.

### IV. Conclusion

The defendants' motion for summary judgment, dkt. [54], is **granted as to** Robertson's Fourteenth Amendment claim against Brown and Davis, his Eighth Amendment deliberate indifference claim against Brown, and his Eighth Amendment conditions of confinement claim against all defendants. The motion is **denied as to** Robertson's Fourteenth Amendment due process claim against defendants Snyder, Purcell, and Stroup.

The clerk is directed to terminate Brown and Davis as defendants on the docket because all claims against them have been dismissed. No partial final judgment shall issue at this time.

If Robertson wishes to be represented by counsel for trial or any potential settlement conference, but his efforts to secure representation have been unsuccessful, he may seek the Court's assistance. Robertson shall have **through September 29, 2021,** in which to file a motion for recruitment of counsel or notify the Court that he wishes to proceed *pro se*. **The clerk is directed** to include the motion for counsel form with Robertson's copy of this Order.

**IT IS SO ORDERED.**

Date: 9/3/2021

_____

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

12

Distribution:

TIMOTHY WAYNE ROBERTSON
943020
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Brandon Carothers
INDIANA ATTORNEY GENERAL
bcarothers@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL
mollie.slinker@atg.in.gov

Samantha May Sumcad
INDIANA ATTORNEY GENERAL
samantha.sumcad@atg.in.gov

Jarod M. Zimmerman
KATZ  KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com